**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RUBY PERRUCCI, *on behalf of herself and all similarly situated individuals*, <br><br> Plaintiff, <br><br> v. <br><br> HUNTER WARFIELD, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:23-cv-872 |

**CLASS ACTION COMPLAINT**

Plaintiff Ruby Perrucci, on behalf of herself and all other similarly situated individuals, files this Class Action Complaint against Defendant Hunter Warfield, Inc. In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual damages, statutory damages, costs, and attorneys' fees for Hunter Warfield's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

2. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

3. Congress recognized that abusive debt collection practices cause harm to consumers by contributing "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

4. The FDCPA, therefore, "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

5. This case concerns fees that Hunter Warfield attempted to collect from Plaintiff, in violation of the FDCPA.

6. Plaintiff was forced to move out of her Avalon Bay Communities ("Avalon Bay") apartment after falling on hard times during the COVID-19 pandemic.

7. Hunter Warfield violated the FDCPA when it attempted to collect purported debts that Plaintiff apparently owed to Avalon Bay.

8. Hunter Warfield misrepresented both the amount and nature of Plaintiffs' alleged debt, including a more than $3,000 "early termination fee" that Plaintiff did not owe.

9. Hunter Warfield also violated the FDCPA by attempting to collect fees from Plaintiff that were not expressly authorized by the agreement creating the debt or otherwise permitted by law—a "payment convenience fee."

10. Plaintiff's lease provided nothing about Avalon Bay's (or its debt collector's) right to charge or collect a payment convenience fee.

11. Plaintiff brings this case on behalf of herself and a class of similarly situated consumers who were likewise dunned for debts pertaining to early termination fees and payment convenience fees that they did not owe Avalon Bay.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

14. Plaintiff is a natural person residing in this District. She is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a.

15. Hunter Warfield is a Florida corporation with its principal place of business in Tampa, Florida. Hunter Warfield is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a.

## FACTS

### *Hunter Warfield is a Debt Collector*

16. Hunter Warfield uses instrumentalities of interstate commerce, including U.S. mail, to effectuate its principal purpose of collecting debts asserted to be owed others, including Avalon Bay.

17. In fact, Hunter Warfield self identifies as a debt-collection agency on its online payment portal. *See* https://webselfserve.hunterwarfield.com/self-service ("Hunter Warfield, Inc. is a debt collection agency. This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.").

18. Additionally, through its Resident Interface product, Hunter Warfield provides nationwide collection services to leasing companies, holding itself out as a "proven industry leader" that can "pursue recovery from coast to coast." Resident Interface by Hunter Warfield, *What Makes our Collection Service Different*, https://www.residentinterface.com/collections/ (last visited June 29, 2023).

### *Debt Collectors Cannot Collect Debts Not Expressly Authorized by the Agreement Creating Them*

19. The FDCPA provides that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

20. Among the categories of "unfair or unconscionable" conduct that the FDCPA prohibits is "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

21. Interpreting that provision, the Fourth Circuit recently ruled that debt collectors cannot lawfully collect payment convenience fees (or other junk fees) that were not set forth in the agreement that otherwise created the subject debt (*e.g.*, a lease). *See Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022) ("Nothing we have said prevents Carrington from extending this payment option to consumers. If it does so, however, it must do so without the imposition of a statutorily prohibited convenience fee.").

22. The Consumer Financial Protection Bureau has since confirmed the same. CFPB Advisory Opinion, *Debt Collection Practices (Regulation F); Pay-to-Pay Fees* (June 2022), *available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_convenienc efees_advisory-opinion_2022-06.pdf ("The Consumer Financial Protection Bureau (CFPB) issues this advisory opinion to affirm that [§ 1692f] prohibits debt collectors from collecting pay-to-pay or 'convenience' fees, such as fees imposed for making a payment online or by phone, when those fees are not expressly authorized by the agreement creating the debt or expressly authorized by law.").

23. Enforcement of § 1692f in the payment convenience fee context is especially important because renters often have reason to prefer immediate, secure payment methods over more archaic payment methods—such as personal checks—that may not attach a convenience fee. *See, e.g.*, Business Insider, *Don't send checks through the mail, the post office is warning.*

4

*Criminals are stealing more than ever*, https://www.businessinsider.com/post-office-check-fraud-mailing-be-careful-usps-scam-2023-6 (last visited July 4, 2023).

### *Plaintiff's Apartment*

24. Plaintiff agreed to rent an apartment at Avalon Bay's Eaves Fair Lakes community with a lease term of January 22, 2020 to March 21, 2021.

25. Plaintiff was forced to end her lease in September 2020 because she could no longer afford her rent due to financial issues caused by the ongoing COVID-19 pandemic.

26. Plaintiff was proactive in her attempts to regain financial stability.

27. First, she provided Avalon Bay with thirty days' notice of her intent to move out of Avalon Bay. Then, she moved into a townhome where she shared rent expenses with multiple family members, who also provided her with childcare assistance.

28. Upon Plaintiff's notice of her intent to end her lease before the Lease End Date, Avalon Bay required Plaintiff to sign an "Offer to Terminate Lease."

29. That document provided for an early termination fee of $3,724.00 but made clear that the "termination notice will not be effective unless accompanied by the termination payment." (Emphasis in original.)

30. It also stated that Plaintiff's "failure to submit the early termination fee payment" would result in Plaintiff "being financially responsible through the Lease End Date or the date a new resident moves into the apartment (whichever comes first)."

31. Plaintiff, in other words, had two options under the Offer to Terminate Lease: (i) pay the early termination fee immediately to effectively terminate her lease; or (ii) remain responsible under the terms of the lease until Avalon Bay rented the apartment to a new renter.

32. Unable to pay the early termination fee given her precarious financial situation, Plaintiff did not do so.

33. Her lease, therefore, was not terminated, and she remained liable under its terms until a new resident moved into her apartment.

34. After Plaintiff moved out, Avalon Bay rented her apartment to a new tenant.

35. Avalon Bay, nonetheless, still attempted to collect the early termination fee in addition to obtaining monthly rental income from the new tenant.

36. Avalon Bay, of course, had no basis for pursuing the early termination fee (which was the equivalent of two months' rent) under the Offer to Terminate Lease because that offer was never accepted by Plaintiff, who did not pay the early termination fee.

37. Indeed, under its own contract, Avalon Bay can never pursue a debt purportedly stemming from an Offer to Terminate Lease because that contract itself requires payment in full before it becomes valid and enforceable.

### *Hunter Warfield's Debt Collection*

38. Rather than seek judgments, Avalon Bay routinely hires Hunter Warfield to pursue early termination fees and other debts.

39. After Hunter Warfield first contacted Plaintiff in March 2021, Plaintiff made four payments of $50.00 each for a period of four months.

40. Plaintiff was not able to pay Hunter Warfield any additional amounts because she did not have any extra monthly income after paying for necessary expenses for herself and her children.

41. Hunter Warfield made efforts to collect $3,825.00 from Plaintiff as recently as April 23, 2023.

42. Hunter Warfield's representations were false because Plaintiff did not—and does not—owe that amount.

43. Most notably, with its demand for payment on April 23, 2023, Hunter Warfield provided Plaintiff with a Statement of Account that demanded payment of the "$3,274.00" charge as "Early Termination Rent."

44. Because early termination fees are never outstanding under the terms of Avalon Bay's Offer to Terminate Lease, any attempts by Hunter Warfield to collect them are unlawful and in violation of the FDCPA.

45. Additionally, no legal basis existed for Hunter Warfield to pursue a "payment convenience fee," which was reflected on Plaintiff's Statement of Account in the amount of $38.

46. Upon information and belief, that payment convenience fee was assessed to Plaintiff's account because, at some point during the lease term, Plaintiff paid for her rent using a payment mode for which Avalon Bay decided that Plaintiff should be charged for using.

47. Plaintiff's lease, however, did not provide for the imposition of payment convenience fees.

48. Because there is no basis for a payment convenience fee in Plaintiff's lease—and because no other law permits the imposition of such a fee—Hunter Warfield could not collect a payment convenience fee from Plaintiff.

49. Hunter Warfield's attempts to collect a payment convenience fee on behalf of Avalon Bay, therefore, was unlawful and in violation of the FDCPA.

**COUNT ONE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(Class Claim – Early Termination Fee)**

50. Plaintiff incorporates each of the preceding allegations.

51. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All persons: (1) who were or are tenants of properties owned by Avalon Bay; who (2) were contacted by Hunter Warfield for payment of an early termination fee (3) during the one-year period prior to the filing of this Complaint.

Plaintiff is a putative class member.

52. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Hunter Warfield's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

53. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Hunter Warfield is a debt collector; (2) whether Hunter Warfield violated § 1692f of the FDCPA by attempting to collect early termination fees that were not provided for in Avalon Bay's form lease(s) or other agreements; and (3) the appropriate amount of statutory damages given the frequency and persistence of Hunter Warfield's violations of § 1692f, the nature of Hunter Warfield's violations, and the extent that Hunter Warfield's violations were intentional.

54. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

55. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representatives because her interests coincide with, and are not antagonistic to, the putative

class members' interests. Plaintiff has retained experienced and competent counsel; she intends to continue to prosecute the action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

56. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Hunter Warfield's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

57. Hunter Warfield violated § 1692f by attempting to collect early termination fees from Plaintiff and the putative class members that were not provided for Avalon Bay's lease(s) or other agreements.

58. Upon information and belief, Plaintiff alleges that, as a standard practice, Hunter Warfield collects early termination fees on behalf of Avalon Bay even though no basis exists for such fees.

59. Upon information and belief, Hunter Warfield's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

60. Plaintiff and the putative class members suffered actual damages as a result of Hunter Warfield's violations of § 1692f.

Based on Hunter Warfield's noncompliance with § 1692f, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

## COUNT TWO:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692f
### (Class Claim – Payment Convenience Fee)

61. Plaintiff incorporates each of the preceding allegations.

62. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All persons: (1) who were or are tenants of properties owned by Avalon Bay; who (2) were assessed a payment convenience fee (3) and were contacted by Hunter Warfield for payment of a payment convenience fee (4) during the one-year period prior to the filing of this Complaint.

Plaintiff is a putative class member.

63. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Hunter Warfield's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

64. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions

predominate over the questions affecting only individual class members. The principal issues include: (1) whether Hunter Warfield is a debt collector; (2) whether Hunter Warfield violated § 1692f of the FDCPA by attempting to collect payment convenience fees that were not provided for in Avalon Bay's form lease(s); and (3) the appropriate amount of statutory damages given the frequency and persistence of Hunter Warfield's violations of § 1692f, the nature of Hunter Warfield's violations, and the extent that Hunter Warfield's violations were intentional.

65. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

66. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representatives because her interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiff has retained experienced and competent counsel; she intends to continue to prosecute the action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

67. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a

potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Hunter Warfield's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

68. Hunter Warfield violated § 1692f by attempting to collect payment convenience fees from Plaintiff and the putative class members that were not provided for Avalon Bay's lease(s).

69. Upon information and belief, Plaintiff alleges that, as a standard practice, Hunter Warfield collects payment convenience fees on behalf of Avalon Bay even though no basis exists for such fees.

70. Upon information and belief, Hunter Warfield's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

71. Plaintiff and the putative class members suffered actual damages as a result of Hunter Warfield's violations of § 1692f.

72. Based on Hunter Warfield's noncompliance with § 1692f, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

## COUNT THREE:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (Individual Claim)

73. Plaintiff incorporates each of the preceding allegations.

74. Hunter Warfield violated § 1692e by falsely representing in its collection letters that Plaintiff owed an early termination fee and a payment convenience fee to Avalon Bay.

75. Hunter Warfield falsely stated that Plaintiff owed amounts that she did not.

12

76. Upon information and belief, Hunter Warfield's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

77. Plaintiff suffered actual damages as a result of Hunter Warfield's violations of § 1692e.

78. Based on Hunter Warfield's noncompliance with § 1692e, Plaintiff seeks actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff seeks her statutory and actual damages, as well as her attorneys' fees and costs as pleaded above against Hunter Warfield; for pre-judgment and post-judgment interest at the legal rate, and any other relief the Court finds appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFF**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*